IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DAVID ALLEN FANTETTI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV351 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff David Allen Fantetti ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff filed his application for Disability Insurance Benefits on December 27, 2012, alleging a disability onset date of March 7, 2012. (Tr. at 10, 203-11.)[1] His claim was denied initially (Tr. at 86-99, 114-17), and that determination was upheld on reconsideration (Tr. at 100-13, 118-21). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 133-34.) Plaintiff attended the subsequent hearing

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7]. As discussed further below, Plaintiff previously filed an application for Disability Insurance Benefits that was approved for a closed period from September 27, 2010 through February 22, 2012, by a decision issued on May 4, 2012. Plaintiff filed the present application seven months later, on December 27, 2012.

on November 5, 2014, along with his attorney and an impartial vocational expert. (Tr. at 10.) At the hearing, Plaintiff amended his alleged onset date to May 5, 2012. (Tr. at 15, 35.)

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 26.) On March 31, 2015, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

2

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: "status post right shoulder surgery, right knee problems[,] and degenerative disc disease of the lumbar spine." (Tr. at 12.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 13-14.) Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is precluded from ladder, rope or scaffold climbing and limited to occasional ramp and stair climbing, pushing, pulling or overhead reaching with the right upper extremity.

(Tr. at 14.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to any of his past relevant work in construction. (Tr. at 24.)

5

However, based on the vocational expert's testimony, the ALJ determined at step five, that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the national economy. (Tr. at 25.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 26.)

Plaintiff now argues that the ALJ erred in three respects. First, Plaintiff challenges the ALJ's evaluation of the medical opinion evidence, including the March 7, 2012 opinion of Dr. Jerry Barron, Plaintiff's orthopedic surgeon; the May 2011 opinion of Dr. Dana Piasecki, another orthopedic surgeon; the September 2014 opinion of Dr. Harrison Frank, an examining physician; and the April 2013 opinion of Dr. Kirk Woosley, Plaintiff's primary care physician. (Pl.'s Br. [Doc. #12] at 4-11.) Second, Plaintiff claims that substantial evidence fails to support the ALJ's credibility assessment. (Pl.'s Br. at 11-15.) Third and finally, Plaintiff contends that the ALJ's failure to include mental RFC limitations consistent with his finding of mild limitations in concentration, persistence, or pace violates Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). After a thorough review of the record, the Court concludes that the ALJ's consideration of the medical opinion evidence raises several concerns with regard to whether the ALJ applied the correct legal standard and with regard to whether the ALJ's determination is supported by substantial evidence. Accordingly, the Court recommends remand, and, in light of this recommendation, declines consideration of the additional issues identified by Plaintiff.

A. Medical Opinion Evidence

6

In this case, Plaintiff presented opinion evidence from at least three different treating or examining physicians opining that he was limited to sedentary work.[4] The ALJ thus correctly notes that "no treating or examining physician has provided an opinion that the claimant is unable to work," since all of Plaintiff's doctors were in agreement that Plaintiff could work at a sedentary position. (Tr. at 21.) However, Plaintiff turned 50 years old on January 5, 2013 prior to the hearing before the ALJ. Plaintiff was determined to have a limited education, and no transferable skills were found. Therefore, pursuant to the Medical Vocational Guidelines (the "grids"), if Plaintiff were limited to sedentary work, he would have been considered disabled by operation of the grids.

After the hearing, the ALJ concluded that Plaintiff was able to perform light work, not just sedentary work. In reaching that conclusion, the ALJ relied in large part on a prior decision considering an earlier claim filed by Plaintiff on July 25, 2011, raising two severe impairments: (1) multiple recent shoulder surgeries, and (2) past knee surgery. (Tr. at 75, 79.) At a hearing on that prior claim, Plaintiff requested a closed period of disability, from September 27, 2010 through February 22, 2012. (Tr. at 75.) A decision dated May 4, 2012, found Plaintiff disabled for that closed period, and further found that Plaintiff's condition improved post-surgery, and that as of February 23, 2012, he could perform light work. (Tr. at 79-81, 83.)

On December 27, 2012, seven months after that decision was issued, Plaintiff filed the present case, alleging disability based on his shoulder condition and knee condition, and also

---

[4] Sedentary work involves lifting no more than 10 pounds at a time, and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567.

7

adding his lower back condition. Plaintiff ultimately presented opinion evidence for the new period from Dr. Barron, Dr. Woosley, and Dr. Frank. Dr. Barron, the orthopedist who performed one of Plaintiff's knee surgeries and both of his shoulder surgeries, recommended in March 2012 that Plaintiff return to a sedentary level of work with lifting of up to ten pounds occasionally, no overhead lifting, no repetitive lifting, and no kneeling, squatting, crawling or ladder climbing. (Tr. at 16, 401).[5] In July 2012 and again in August 2012, Dr. Barron performed a reevaluation and confirmed the work restrictions, noting that "[w]e did write return to work with the following restrictions at sedentary level with 10 pounds lifting occasionally, no overhead lifting and no repetitive lifting." (Tr. at 410, 452.) Dr. Barron continued those restrictions again after an examination in October 2012. (Tr. at 409.) Dr. Woosley, Plaintiff's primary care provider, in an evaluation on April 16, 2013, noted that based on Plaintiff's past shoulder surgery, Plaintiff had lifting restrictions of "no repetitive motion and less than 5 lbs" and based on his past knee surgery, Plaintiff had restrictions of "no crawl, squat, long distance walking." (Tr. at 620.) Dr. Frank, who reviewed Plaintiff's medical records and examined Plaintiff on June 4, 2014, recommended that Plaintiff be limited to sedentary work and "lift[] no more than 10 pounds, limit standing and walking to less than 6 hours of the 8 hour work day . . . [and] is also restricted in bending, stooping, and sitting." (Tr. at 603.)

In nevertheless concluding that Plaintiff could perform light work, the ALJ specifically relied on the prior May 2012 administrative decision, which approved a closed period of

---

[5] Similarly, Dr. DeLay examined Plaintiff in May 2012 and agreed with Dr. Bannon's analysis and concluded that Plaintiff could return to work "with restrictions." (Tr. at 389.)

disability from September 27, 2010 through February 22, 2012, but found that as of February 23, 2012, Plaintiff could perform light work (Tr. at 15). However, in evaluating the weight to give that May 2012 decision, the ALJ cited to a since-rescinded Acquiescence Ruling. Specifically, in relying on the prior decision, the ALJ held as follows:

> The undersigned has considered the findings of this decision in accordance with Social Security Acquiescence Ruling 94-2(4), Lively v. Secretary of Health and Human Services, 820 F.2d 1391 (4th Cir. 1987). The current claim was filed less than twelve months from the decision dated May 4, 2012 and there is no evidence of any significant worsening in the claimant's medical condition since that date (Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473 (4th Cir. April 1999), and Acquiescence Ruling 00-1(4). Therefore, the undersigned has given substantial weight to and adopted some of the findings made in the prior decision. Specifically, the previous Administrative Law Judge found that beginning February 23, 2012, the claimant had the residual functional capacity to perform light work involving occasional climbing, pushing and pulling with the right arm and occasional overhead reaching with the right arm.

(Tr. at 15.) Thus, the ALJ specifically stated that he "considered the findings of this decision in accordance with Social Security Acquiescence Ruling 94-2(4)." (Tr. at 15.) Social Security Acquiescence Ruling 94-2(4) was adopted in an effort to implement the decision of the Fourth Circuit in Lively, and provided that when a final decision has been made by an ALJ or the Appeals Council and a subsequent disability claim is raised for an unadjudicated period, adjudicators of the later claim must adopt findings made in the prior decision at each step in the sequential evaluation process "unless there is new and material evidence relating to such a finding." AR 94-2(4). However, in Albright v. Commissioner, 174 F.3d 473 (4th Cir. 1999), the Fourth Circuit held that "Acquiescence Ruling 94-2(4) is not an accurate restatement of our decision in Lively" and "the SSA is without justification to apply the Ruling." The Social Security Administration therefore rescinded Acquiescence Ruling 94-2(4) and adopted instead Acquiescence Ruling 00-1(4), which provides that the prior decision must be considered and

9

then given "appropriate weight in light of all relevant facts and circumstances," including whether the fact on which the prior finding was based is "subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition," and the "likelihood of such a change, considering the length of time that has elapsed." AR 00-1(4).

In the present case, the ALJ stated that he "considered the findings of [the prior] decision in accordance with Social Security Acquiescence Ruling 94-2(4)." (Tr. at 15.) That is plainly error, as AR 94-2(4) has been rescinded. However, the ALJ then cited Acquiescence Ruling 00-1(4) and found no evidence that Plaintiff's condition had worsened, and therefore gave the prior decision "substantial weight" and "adopted some of the findings" from the prior decision. In light of these ambiguous statements, it is not clear if the ALJ actually applied Acquiescence Ruling 94-2(4) (which has been rescinded) or instead applied Acquiescence Ruling 00-1(4). The ALJ's stated reliance on Acquiescence Rule 94-2(4), along with the ALJ's deference to the May 2012 decision and the focus on the lack of new evidence of a worsening condition, raise concern that the ALJ applied the incorrect standard.

Moreover, even if Acquiescence Ruling 00-1(4) were applied, the ALJ in this case focused on the fact that the alleged onset date in the present case was May 5, 2012, immediately after the date of the prior decision. The ALJ relied heavily on this timing in concluding that the prior decision was entitled to "substantial weight." (Tr. at 15, 22.) However, while the closeness in time would be a factor to consider under Acquiescence Ruling 00-1(4), the relevant period in this case continued through January 9, 2015, more than two and a half years after the prior May 2012 decision. Therefore, the prior decision would not necessarily be entitled to substantial weight for the entire period at issue.

10

Even more importantly, contrary to the ALJ's repeated observation that there was no evidence of worsening of Plaintiff's condition (Tr. at 15, 22), the evidence in the record actually contains substantial evidence of a worsening in Plaintiff's back condition in late 2012 and through 2013, which the ALJ acknowledges elsewhere in the decision. Specifically, in a treatment note dated October 15, 2012, Dr. Barron noted that Plaintiff "unfortunately has developed back pain related to abnormal lifting and compensation. He has not received any treatment to date on his back." (Tr. at 408.) Dr. Barron referred Plaintiff for further evaluation of his back. (Id.) For the next month, during November 2012, Plaintiff was treated at Love Chiropractic Center for his low back pain, which was "progressively getting worse." (Tr. at 497.) Those records note tenderness and swelling on both sides of the lumbar spine, limited range of motion, positive test results, x-ray showing decreased disc height, and a diagnosis of "degeneration of lumbar or lumbosacral intervertebral disc." (Tr. at 499-501, 503, 504, 505, 507, 508, 510, 512, 514, 516, 518, 519, 520.) Plaintiff also saw Dr. Gudeman, who evaluated Plaintiff's low back pain for purposes of Plaintiff's worker's compensation claim related to his shoulder injury, and concluded that the low back pain arose later and was not part of the work-related injury. (Tr. at 426-27.) Plaintiff subsequently filed the present application for benefits. A few months later, in April 2013, Plaintiff saw Dr. Woosley, who noted a markedly diminished range of motion in Plaintiff's lumbar spine with mild, diffuse low back tenderness (Tr. at 18, 621). In a subsequent December 2013 treatment note, Dr. Woosley noted that Plaintiff had increased back pain, and an "x-ray of the LS spine shows increased degenerative change with narrowing of the disk space at the L4-5 level." (Tr. at 632.) In light of Plaintiff's ongoing symptomology, Dr. Woosley ultimately referred Plaintiff

11

to Dr. Bailey, a spine specialist at Carolina Neurosurgery and Spine (Tr. at 632-33). Dr. Bailey saw Plaintiff in December 2013 and January 2014, and as noted by the ALJ,

> Dr. Bailey confirmed that [Plaintiff's] MRI demonstrated degenerative changes primarily involving the disc space a[t] L4-[L]5 with some involvement at L5-S1 and some arthropathy. Dr. Bailey also compared x-rays of [Plaintiff's] lumbar spine performed in December 2013, which showed advance[d] degenerative changes, which included an L4-L5 disc collapse and images of [Plaintiff's] lumbar spine from February 2008, which showed the disc space at L4-5 was just over 9mm and in December 2013 was about 4.5 mm suggesting advanced changes. Therefore, Dr. Bailey opined that[,] based on the changes in [Plaintiff's] history, there was probably a discogenic predominant component of pain.

(Tr. at 20 (citing Tr. at 594.)) Dr. Bailey's treatment notes from December 26, 2013 noted pain with motion in the lumbar spine and moderate restriction in the range of motion in Plaintiff's lumbar spine, with an impression of "[c]hronic, progressive low back pain" and "[i]maging evidence of lumbar disc disease, spondylosis and spinous process contact." (Tr. at 575-76.) Dr. Bailey ordered an MRI, which confirmed degenerative changes and facet arthropathy, and the records reflect Dr. Bailey's discussion of the treatment options and the "difficulty in treating discogenic pain." (Tr. at 583.) Dr. Bailey administered a lumbar transforaminal epidural steroid injection in March 2014. (Tr. at 19 (citing Tr. at 580.)) Approximately three months later, Plaintiff presented to Dr. Frank with continuing lumbar spine tenderness, a limited range of spinal motion, and "increased pain with facet loading bilaterally." (Tr. at 19 (citing Tr. at 603-04.))[6]

---

[6] The ALJ also identified one instance in January 2014 in which Plaintiff "denied having any pain" and noted that, following ten physical therapy sessions in 2012, Plaintiff's symptoms were reduced to "4-5 out of 10 on a pain scale." (Tr. at 20 (citing Tr. at 581, 367.)) The ALJ therefore concluded that "at most, the medical evidence of record shows that [Plaintiff's] back pain was intermittent as of January 2014." (Tr. at 19.) Notably, in making this finding, the ALJ opined that "degenerative conditions as described by Dr. Bailey in this case, are progressive and likely the effects of aging. The fact that the claimant became symptomatic is not unusual. It is well know[n] that back pain is a [sic] common in the aging process and in most cases, one does not remain symptomatic.

12

Finally, in assigning less weight to the opinions of Plaintiff's physicians, the ALJ also relied on a Functional Evaluation from February 2012 that was relied upon in the prior case. (Tr. at 22, 23.) However, that FCE was not made part of the record in the present case, and is not before the Court for review. From the ALJ's decision, it does not appear that the FCE was actually reviewed by the ALJ, either. The ALJ noted that Dr. Barron had considered but declined to adopt the FCE because Plaintiff told Dr. Bannon that the FCE caused him to have increased shoulder pain and he did not feel it was an accurate assessment of his ability to work long term without recurrent symptoms. (Tr. at 22, 415.) The ALJ observed that:

> Obviously, an opinion was offered by the person who administered the FCE that the claimant could work at the medium level, which involves lifting up to 50 lbs. FCEs are typically done by physical therapists, who are obviously not medical doctors. But the FCEs involve the administration of tests, under standardized procedures, where the patient is actually tasked with lifting, carrying pushing, pulling, handling, fingering and the like. So, these FCE opinions are based on actual testing of the patient's capacities. Thus, these opinions hold a certain aura of reliability, unlike many opinions of doctors whose numbers are thrown out without the benefit of any significant testing of lifting, carrying, etc.

(Tr. at 22.) Even if the ALJ's observations are correct on a generalized basis, in the present case there is no indication who performed the FCE, what tests were done, or the results of those tests. The ALJ nevertheless rejected the opinions of Plaintiff's treating physicians by relying on this FCE, which is not itself in the record and was apparently not actually reviewed by the ALJ.

---

Many times symptoms resolve on their own or with the use of conservative treatment." (Tr. at 20; compare Tr. at 593-600.) However, the ALJ offers no medical basis for his own lay hypothesis that Plaintiff's pain is a normal product of aging and that Plaintiff's symptoms may resolve on their own. In addition, to the extent that the ALJ relies on the opinions of the state agency physicians, their review through December 2012 did not consider the additional evidence of Plaintiff's back pain, including Dr. Woosley's evaluations in April 2013 and December 2013 and Dr. Bailey's evaluation and imaging in December 2013 and January 2014. (Tr. at 91, 106.)

13

Thus, the Court concludes that the ALJ's decision to reject the opinions of Plaintiff's treating and examining physicians is not supported by substantial evidence to the extent the ALJ's decision was based on (1) a stated reliance on rescinded Acquiescence Ruling 94-2(4) in adopting the RFC from the prior May 2012 decision, (2) the decision to give "substantial weight" to the May 2012 decision based on the assertion that there was no evidence of significant worsening in Plaintiff's condition, even though the present claim involved an additional severe impairment (degenerative disc disease of the lumbar spine), with x-ray and MRI evidence of worsening over time, and (3) the ALJ's reliance on an FCE that is not part of the record and that the ALJ did not actually review.

In addition, the Court notes that Plaintiff raises additional points regarding the ALJ's treatment of the individual opinions. For example, the ALJ purports to discount Dr. Barron's opinion because it relates only to Plaintiff's shoulder and his lifting limitations for his right arm. However, it is not clear why this would provide a basis for discounting the opinion with respect to Plaintiff's limitations as a result of his shoulder impairment.[7] Moreover, Dr. Barron also performed Plaintiff's knee surgery, and his opinion specifically includes limits on kneeling, squatting and crawling. (Tr. at 405.) Thus, Dr. Barron addresses both Plaintiff's knee and his shoulder.[8]

---

[7] At the hearing, the Vocational Expert testified that a 5-pound lifting limitation on Plaintiff's right arm would result in a finding of sedentary under the Dictionary of Occupational Titles, and that Plaintiff would need both arms to be able to lift at least 20 pounds occasionally and 10 pounds frequently to be able to do light-level work. (Tr. at 65-66.)

[8] Plaintiff also notes that the ALJ failed to address Dr. Barron's limitation on kneeling, squatting, and crawling. Dr. Woosley and Dr. Frank noted similar postural limitations in light of Plaintiff's prior knee surgeries, but the ALJ did not address those postural limitations at all.

In addition, the ALJ did not evaluate, address, or assign weight to the restrictions recommended by Dr. Woosley, nor were they identified in the administrative decision other than as the findings of "claimant's family physician." (Tr. at 22.) Defendant now contends that "it is not clear" whether the restrictions listed by Dr. Woosley "comprise a medical opinion entitled to ALJ analysis." (Def.'s Br. [Doc. #15] at 15.) In that regard, Defendant suggests that Dr. Woosley may have merely memorialized restrictions found elsewhere the record based on some combination of Plaintiff's own subjective statements, self-described medical history, and/or a review of Plaintiff's past medical records. (Id. at 15-16.) However, Dr. Woosley examined Plaintiff, and the treatment note reflects that the prior diagnoses have been "confirmed," and Dr. Woosely also added his own comments, noting "[o]n lifting restrictions – no repetitive motion and less than 5 lbs" and "[r]estrictions – no crawl, squat, long distance walking." (Tr. at 620-21.) Moreover, the ALJ himself included Dr. Woosley's posited restrictions when recounting Plaintiff's arguments regarding "several opinions . . . illustrative of [Plaintiff's] functional limitations." (Tr. at 21-22.) Specifically, the ALJ noted that, "in April 2013, the claimant's family physician indicated that the claimant continued to have lifting restrictions with no repetitive motion and less than five pounds of lifting." (Tr. at 22.) Although the ALJ later found the opinion evidence, implicitly including Dr. Woosley's opinion, "problematic for several reasons," the ALJ never addressed his reasons for discounting Dr. Woosley's findings. (Tr. at 22.) In fact, the decision includes no further mention of Dr. Woosley or his stated restrictions. The ALJ did not assert that these limitations were not an opinion, as Defendant now contends, and having acknowledged Dr. Woosley's

15

Case 1:15-cv-00351-NCT-JEP   Document 16   Filed 11/21/16   Page 15 of 17

findings as opinion evidence, the ALJ was required to address them in a manner that enables judicial review. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).[9]

For all of these reasons, the Court concludes that substantial evidence fails to support the ALJ's treatment of the opinions of Plaintiff's treating physicians in this case. The Court therefore concludes that the case must be remanded for further consideration of the evidence of record and, if there is some question as to the proper alleged onset date, any medical or vocational expert testimony that might be appropriate. Having reached this determination, the Court need not consider at this time the other issues raised by Plaintiff.[10]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Summary Judgment [Doc. #14] should be DENIED, and Plaintiff's

---

[9] Defendant alternatively contends that, even if Dr. Woosley did render an opinion, the ALJ's failure to weigh it was harmless because Dr. Woosley's treatment of Plaintiff focused on his back pain rather than his shoulder or knee impairments (see Tr. at 619-34) and "nothing in Dr. Woosley's treatment records support[s] the alleged limitations" (Def.'s Br. at 17). However, Dr. Woosley's examination reflects both a marked diminished range of motion of the lumbar spine and diminished range of motion of the right shoulder. (Tr. at 621.) Moreover, the ALJ never identified Dr. Woosley's focus on back pain, inconsistency of the medical record, or any other basis for his failure to consider Dr. Woosley's opinion, and the Commissioner's after-the-fact rationale cannot provide sufficient explanation for meaningful review by the courts. See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) (courts must review administrative decisions on the grounds upon which the record discloses the action was based); see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) ("[The ALJ] must articulate some legitimate reason for his decision."); Wyatt v. Bowen, No. 89-2943, 887 F.2d 1082 (table), 1989 WL 117940, at *4 (4th Cir. Sept. 11, 1989) (unpublished) ("[T]he duty of explanation will be satisfied when the ALJ presents '[the court] with findings and determinations sufficiently articulated to permit meaningful judicial review,' which must include specific reference to the evidence producing [the ALJ's] conclusion." (quoting DeLoatche, 715 F.2d at 150), and citing Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985))).

[10] The Court notes that the Index of Exhibits makes reference to Worker's Compensation evidence dated June 11, 2013, from the North Carolina Industrial Commission, citing to Exhibit B11E. However, it does not appear that the evidence from the Industrial Commission was included in the record. To the extent that additional evidence exists that was not considered, that can be further addressed on remand.

16

Motion for Judgment Reversing the Commissioner [Doc. #11] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 21st day of November, 2016.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge